LEWIS v. MESTA MACH. CO.

(Circuit Court, W. D. Pennsylvania. April 7, 1908.)†

No. 5.

PATENTS (§ 328*)—INFRINGEEMNT—MOLD FOR CASTING ROLLS.

    The Lewis patent, No. 574,616, for a mold for casting rolls, designed to hold the roll at equal distance from the inner wall of the chill mold while cooling, and thus secure a uniform depth of chill, construed, and *held* not infringed.

    [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Christy & Christy and Bayard H. Christy, for complainant.
Bakewell & Byrnes, for defendant.

BUFFINGTON, Circuit Judge. This bill, filed by John L. Lewis against the Mesta Machine Company, charges infringement of all the claims of patent No. 574,616, granted to him January 5, 1897, for a mold for casting rolls. Rolls consist of three parts: The outer ends, called "wobblers," serve to couple them to the motive power; then come the necks, on which the rolls are journaled; and next the actual rolling surface. Rolls are cast in a vertical position, and to meet the wear and tear of service it is necessary during the process of casting to chill or harden the rolling surface. It is also highly desirable, in order to meet stress and strain, contraction and expansion, to secure a chill of relatively uniform depth. As it is not necessary to chill or harden the wobbler and neck sections, they are cast in sand, contained in a cope at the upper end of the mold and in a drag at the lower. The intermediate portion of the mold is a cylindrical metal matrix, and in this the chilled, rolling surface is cast. The molten metal is poured in a lateral standpipe, the head of which is higher than the mold. The metal enters the drag from the side, and rises through drag, chill-mold, and cope until all are filled. As the rising metal comes in contact with the central or metal part of the mold, called the "chill-mold," it chills or hardens, thus forming an external, cylindrical shell. This shell is filled with mobile, molten metal. The chilling of the shell causes its horizontal contraction and its withdrawal from the supporting surface of the chill-mold. At the same time a vertical contraction of the shell takes place. By one of such two agencies the shell, filled with the mobile, molten metal, is sometimes tilted, and the sag of the molten metal may crack the shell or lead to uneven depths of chill. These dangers were thus described by Lewis in his specification:

    "As is well known among roll manufacturers, it is nearly impossible to obtain at all times a uniform depth of chill at all points on the roll surface. It is also well known that almost as soon as the fluid metal comes into contact with the inner wall of the chill the metal is solidified, forming a thin shell, while the metal within the shell remains liquid for a considerable time. The contraction which occurs on the formation of the thin shell of chilled iron draws the latter out of immediate contact with the mold chill, so that

such shell is subjected to considerable internal pressure, due to the liquid column of metal, while nearly or entirely unsupported externally. This internal pressure against the unsupported shell frequently produces longitudinal cracks in the roll, rendering the latter useless, except for scrap. The object of the present invention is to provide for the maintenance of the cooling and solidifying metal in such position within the mold that all points on the surface of the roll shall be equidistant from the internal wall of the chill of the mold, or that the solidifying metal shall be held in such relation to the chill of the mold that an approximately uniform depth of chill may be obtained at all points. It is a further object of the invention to provide a series of circumferential supports for the solidifying metal until such time as it is relieved from the internal pressure of the liquid column, or, in other words, until such time as the chilled shell shall have become strong enough by cooling to resist the fluid pressure within. * * * I have found that when a mold of the character or construction above described is filled with metal, and the latter begins to contract during cooling and solidification, the roll will frequently take an inclined position; that is, it will lean aganst the chill of the mold on one side, and consequently will be separated from it at other points. Whenever the roll remains in contact with the chill of the mold by reason of the bending or inclination of the roll body, the depth of chill may be considerable, while at those points which are not in contact the depth of chill will be less; such shallowness of chill being proportioned to the distance between the surface of the roll and the internal wall of the chill. It frequently occurs that the roll, in cooling and contracting, will change its position one or more times. Hence there will be one or more points having a considerable depth of chill and a corresponding number of points having lesser depth of chill."

To overcome such difficulties Lewis cut annular channels or grooves, downwardly beveled, in the theretofore substantially plane surface of a chill-mold. As the outer shell contracted horizontally and shrank away from the mold wall, and contracted vertically as well, it slid down the beveled side of the annular groove and so maintained contact with, and support from, the mold wall; or to describe the process in the patentee's words:

"This centralization of the roll may be effected in different ways, as, for example, the chill of the mold may be so constructed as to be provided with a series of downwardly beveled or inclined shoulders, which will bear upon correspondingly inclined shoulders formed on the roll during casting. During cooling and solidification the roll contracts longitudinally and diametrically, and as the longitudinal contraction will necessarily produce a sinking or downward movement of the roll in the chill of the mold the inclined shoulders on the roll and chill of the mold will bear upon each other and hold the roll centrally within the chill of the mold."

Both in illustration by figures and by description in specification Lewis made his invention consist of annular grooves or annular zones of indentations, cut or notched in the plain surface of a chilled mold. Moreover, these notched bands or grooves he contrasts with the other or unindented portions of the chill-mold, which latter parts of the mold he describes in the claim as a "substantially smooth inner surface." This localizing of his supporting bands he carried into the claims by describing his chill-mold as consisting of two parts, viz.: One where his bands or grooves were located; the other, which remained a substantially smooth surface, such as was found in an ordinary chill-mold. In other words, his claim consisted, inter alia, of a chill-mold made up of two parts, viz.:

(1) "A substantially smooth inner surface;" (2) "and supports for the casting constructed and arranged to bear on the surface of the casting during cooling."

How these supports are "constructed and arranged," and that they constitute a part only of the chill-mold wall, are pointed out by the patentee, where in his specification he says:

"It will be readily understood by those skilled in the art that the recessing, notching, or cutting away of portions of the wall of the chill of the mold will result in the production of shoulders or projections on the roll; such shoulders or projections having bevels or inclines corresponding to similar bevels or inclines in the recesses, grooves, or cavities in the chill of the mold."

We are the more strongly impelled to hold these localized bands or grooves marked the scope of Lewis' invention and the limitations of his claims when we study the roll-molding art. Prior to Lewis' invention the practice was common in machining the inner surface of chill-molds to make a substantial spiral rough-cut. These rough-cuts served to better hold the paint with which such molds are coated before casting, and gave a rough, spirally grooved surface to the roll, which better adapted it for machining. This practice was, of course, known to Lewis; but the fact, which has since been learned, was not then known that by making these spiral rough-cuts of proper depth practically the entire chill-mold surface can be made to aid in centering rolls. But this Lewis did not disclose or contribute to the art, nor are his claims broad enough to cover it. On the contrary, his method localized single, annular bands or zones, and his claims only covered the practice of cutting or notching the particular and local annular sections of the chill-mold, which alone he had found efficacious. The subsequent discovery that the old-time rough-cuts of the remainder of the "substantially smooth inner surface" of the chill-mold, which he did not utilize, could be utilized as a roll support by simply deepening the grooves, he neither discovered nor disclosed. To give him a monopoly for that which he did not contribute to the art would be unjust and at variance with the purpose of the patent system. Thus construed, his claims are not infringed. The respondent company does not groove annular, localized bands, but whatever grooving they have done consists in more deeply cutting the spiral rough-cuts of the old practice which covered the entire inner surface of the chill-mold.

A decree may be drawn dismissing the bill.